

# In the Missouri Court of Appeals
# Eastern District
## DIVISION THREE

| | | |
|---|---|---|
| TROY CALLAHAN, | ) | No. ED111206 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Francois County |
| vs. | ) | 21SF-CC00156 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Wendy W. Horn |
| | ) | |
| Respondent. | ) | Filed: October 31, 2023 |

Before Lisa P. Page, P.J., Gary M. Gaertner, Jr., J., and Angela T. Quigless, J.

Troy A. Callahan (Movant) appeals from the motion court's judgment denying him post-conviction relief pursuant to Rule 29.15[1] after an evidentiary hearing. We affirm.

## Background

Movant was convicted of three counts of first-degree statutory sodomy of his granddaughter (Victim), who was less than twelve years old, following a jury trial in St. Francois County. During trial, the State presented evidence including testimony from the child, her mother, and the Children's Advocacy Center (CAC) forensic interviewer (Interviewer). The State played the video recording of Victim's forensic interview, and entered into evidence Victim's anatomical drawings used to show where Movant touched and hurt her. Movant did not testify and presented no evidence. The jury found Movant guilty and the court entered judgment

---

[1] All references to Rules are to Missouri Supreme Court Rules (2021).

upon their verdict and sentenced Movant as a prior and persistent felony offender to consecutive terms of thirty years of imprisonment on each of the three counts, for a total of ninety years. This court affirmed his conviction and sentence on March 30, 2021. *State v. Callahan*, 628 S.W.3d 666 (Mo. App. E.D. 2021).

Movant filed a timely *pro se* motion for post-conviction relief. Post-conviction counsel (PCR Counsel) was appointed for him and timely filed an amended motion for post-conviction relief. The motion court held an evidentiary hearing on Movant's amended motion to vacate, set aside or correct the judgment on August 19, 2022. Movant testified at the hearing and claimed his trial defense before the jury was that he did not commit the crime, thus, whether the jury believed the complaining witness was critical. Movant's trial counsel (Trial Counsel) also testified. She agreed Movant's defense was that the crimes did not occur. Trial Counsel recalled that the complaining witness testified, with some corroboration by her mother, that Movant had lived in her house, but there was no forensic or physical evidence in the case. Thus, Trial Counsel agreed credibility was critical to the case.

Trial Counsel did not independently recall the issue of credibility raised during *voir dire* but had some recollection after reading the trial transcript. When asked if the State's line of questioning was objectionable about whether one witness's testimony is enough for the jury to find the defendant guilty, Trial Counsel testified, "Looking back, yes." Movant's PCR Counsel asked Trial Counsel whether she objected at the time; Trial Counsel responded, "No. According to the record, I didn't lodge an objection." The questions by PCR Counsel and answers by Trial Counsel continued as follows:

[PCR Counsel]: Okay. Was there a specific reason that you didn't object?

[Trial Counsel]: Not that I can recall.

PCR Counsel asked whether Trial Counsel objected to any of the remaining questions. Trial Counsel answered she did not, but "I think at one point in time when a specific juror was questioned I may have asked to be able to clarify, and I think the Court stepped in and asked the clarifying question, but I didn't lodge any objections." They continued:

[PCR Counsel]: But you believe that this line of questioning was objectionable?

[Trial Counsel]: Yes, I think I could have objected.

[PCR Counsel]: All right. And why do you believe that this was objectionable?

[Trial Counsel]: Because I think, looking back, that [the prosecutor] was mischaracterizing the standard of proof necessary in a criminal case.

[PCR Counsel]: Would you say that [the prosecutor] was asking the jurors to commit to a certain stance on the questions that he was asking?
. . .
From the way that [the prosecutor] phrased these questions, was it your understanding that the jurors would have to commit to one – to believe that witness?

[Trial Counsel]: One of the questions on page 64 [the prosecutor] asks is, "If all I have is [Victim's] testimony regarding the allegations in this case, is there anybody who cannot find the defendant guilty if I didn't have any other evidence but [Victim's] own testimony?" I would think that's looking for a commitment.

[PCR Counsel]: And he uses the complaining witness's name there, correct?

[Trial Counsel]: Yes.

[PCR Counsel]: So would you say that this is specific to that particular witness?

[Trial Counsel]: Yes.

[PCR Counsel]: And does [the prosecutor] – do you remember if [the prosecutor] goes into the facts of the case at all?

[Trial Counsel]: I don't recall.

[PCR Counsel]: Now, were these questions isolated to *voir dire* or did they come up at any point during the trial?

3

[Trial Counsel]: I don't particularly recall.

[PCR Counsel]: Would it help your recollection to see the transcript?

[Trial Counsel]: Yes.

PCR Counsel pointed out in the transcript where the prosecutor mentioned the topic again in closing argument, reminding Trial Counsel that the prosecutor stated, "I mean, we discussed that in *voir dire* and I asked everyone if they would require physical evidence before they could determine his guilt and nobody raised their hand, so I'm asking you to stick with me on that." PCR Counsel asked Trial Counsel if she understood that to mean the prosecutor was asking the jury to reassert their commitment from the *voir dire*, and Trial Counsel answered, "yes." On cross-examination, Trial Counsel agreed that the questions determining whether a juror could find guilt without physical evidence were also beneficial to Movant, and the court gave the standard instruction on assessing credibility. She agreed the standard of proof "beyond a reasonable doubt" was discussed with the jurors too.

Trial Counsel was also questioned about Interviewer, who testified at trial because she had conducted an interview of Victim at the CAC. When asked if Trial Counsel remembered Interviewer's testimony regarding the difference between accidental and purposeful disclosures from children, Trial Counsel said she did not independently recall, but after reviewing the transcript, she thought Interviewer had testified that accidental disclosure would more likely be true, but she did not remember exactly. Trial Counsel said Interviewer's statement that Victim's disclosure was accidental was objectionable because, "looking back on it, it tries to bolster the credibility of [Victim's] testimony, as well as it kind of invades the province of the jury on whether or not she's a credible witness." Trial Counsel again agreed witness credibility here was "everything." However, "[f]rom the record it appears that [Trial Counsel] didn't [object]," and

4

said, "there's no particular reason." Instead, Trial Counsel recalled taking the opportunity to cross-examine Interviewer and confirmed with her that it was not her job to assess whether or not a child was telling the truth, to raise some doubt as to her credibility.

The motion court received proposed findings of fact and conclusions of law from each side, then issued its judgment denying Movant relief. The motion court held that Trial Counsel's decision not to object to specific questions during *voir dire* was "the result of reasonable professional judgment based on Trial Counsel's trial strategy" where counsel testified "it would certainly be beneficial to know which potential jurors would only require the testimony of" Victim. The motion court also noted "several times during the course of [*voir dire*], the Court instructed the jury panel on evaluating the credibility of witnesses."

Additionally, the motion court held that Trial Counsel's decision "not to object to the testimony of [Interviewer] was not ineffective, but rather, this was the result of reasonable professional judgment based upon Trial Counsel's trial strategy." The court noted that Trial Counsel "took the opportunity to impeach [Interviewer's] testimony in an attempt to bolster [Movant's] case at trial."

In conclusion, the motion court held that Movant "failed to prove that Trial Counsel was ineffective and that her ineffectiveness prejudiced" Movant. Movant appeals.

**Discussion**

Movant raises three points on appeal, each arguing the motion court clearly erred in denying his motion for post-conviction relief pursuant to Rule 29.15, after an evidentiary hearing, and violated his right to due process of law, effective assistance of counsel, and a fair trial under the Missouri Constitution Art. I, Sections 10 and 18(a), and the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution. Movant's first point alleges the motion court

5

clearly erred in denying his claim that Trial Counsel was ineffective for failing to object during *voir dire* because the prosecutor's questions improperly elicited a commitment from the jury panel to react a specific way when presented with certain evidence. Second, Movant argues the motion court clearly erred in denying his claim that Trial Counsel was ineffective for failing to object to Interviewer's improper testimony that a hypothetical disclosure under identical circumstances to Victim arose accidentally and therefore was less likely to be fabricated and allowed the jury to consider an expert opinion bolstering the credibility of Victim. Third and finally, Movant alleges the motion court clearly erred in accepting the State's argumentative proposed findings of fact and conclusions of law via "rubber stamp," which contained factual inaccuracies and showed no sign of independent examination or analysis of the relevant law and facts.

*Standard of Review*

A motion court's judgment is presumed correct and will be overturned only when either its findings of fact or its conclusions of law are clearly erroneous. *McLaughlin v. State*, 378 S.W.3d 328, 336-37 (Mo. banc 2012); Rule 29.15(k). To overturn a motion court's ruling, the ruling must leave the appellate court with a "definite and firm impression that a mistake has been made." *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009) (internal quotations omitted).

To be entitled to post-conviction relief for ineffective assistance of counsel, a defendant must satisfy the two-prong *Strickland* test. *McLaughlin*, 378 S.W.3d at 337 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). First, the defendant must show his attorney failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation. *Strickland*, 466 U.S. at 687. Second, the trial counsel's failure must prejudice

6

the defendant. *Id.* A defendant must show both prongs by a preponderance of the evidence to prove ineffective assistance of counsel. *McLaughlin*, 378 S.W.3d at 337.

The performance prong of the *Strickland* test is met by overcoming a strong presumption that counsel's conduct was reasonable and effective. *Id.* Substantial deference must be given to counsel's judgment. *Strickland*, 466 U.S. at 689. The movant must point to "specific acts or omissions of counsel that, in light of all circumstances, fell outside the wide range of professional competent assistance." *McLaughlin*, 378 S.W.3d at 337 (internal quotation omitted). The choice of one reasonable trial strategy over another is not ineffective assistance, but an unreasonable decision may be. *Zink*, 278 S.W.3d at 176. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. To fairly assess attorney performance, we must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690).

To satisfy the prejudice prong of the *Strickland* test, the movant must demonstrate that, absent the claimed error, there is a reasonable probability that the outcome would be different. *Strickland*, 466 U.S. at 694. This exists when there is "'a probability sufficient to undermine confidence in the outcome.'" *Anderson v. State*, 196 S.W.3d 28, 33-34 (Mo. banc 2006) (quoting *Strickland*, 466 U.S. at 694).

7

*Point I*

Movant's first point alleges the motion court clearly erred in denying his claim that Trial Counsel was ineffective for failing to object to the prosecutor's inquiry during *voir dire* because the prosecutor's questions improperly elicited a commitment from the jury panel to react a specific way when presented with certain evidence. Further, he contends because Trial Counsel failed to make a meritorious objection to the prosecutor's line of inquiry, there is a reasonable probability that but for Trial Counsel's error, the jury would have acquitted Movant of all charges.

Movant argues *State v. Crew*, 803 S.W.2d 669 (Mo. App. E.D. 1991), is applicable in holding "[i]t is reversible error for an attorney during *voir dire* to attempt to obtain from the venire a commitment or a pledge to act in a specific way if certain facts are elicited or certain contingencies arise at trial." *Id.* (italics added). *Crew* was a direct appeal in which the defendant objected to the prosecutor's statement that the State may bring in one witness to provide evidence of all the elements of the crime. *Id.* at 670. The court deemed the prosecutor's questions to the venire panel were appropriate where they were intended to determine which panel members had preconceived prejudice against deciding the issues on the merits based solely on the testimony of a single eye-witness, but no panel members provided answers. Therefore, no one committed to act one way or another, and nothing in the record indicated a reduction in the burden of proof. *Id.* at 670. Movant argues *Crew* differs in that the State here elicited several responses from venire members to discover who else might require more evidence than the testimony of one eye-witness, in an attempt to precondition the seated jury's response to its evidence, and only vaguely referenced the State's burden of proof. Movant contends Trial Counsel was ineffective because a reasonably competent attorney would have objected to the

8

prosecutor's improper line of questioning or would have requested a clarification to explain the State's burden of proof.

However, in another direct appeal, *State v. Joliff*, 867 S.W.2d 256, 260 (Mo. App. E.D. 1993), the court held that although it is reversible error for an attorney to attempt during *voir dire* to obtain a commitment or pledge to act in a specific way if certain facts are elicited or certain contingencies arise at trial, "counsel may probe the venire to determine preconceived prejudices that would prevent the jurors from following the court's instructions." The *Joliff* court did not find a manifest abuse of discretion in the trial court's ruling on the defense's objection during *voir dire*, permitting the prosecutor to ask questions whether the venire would require more than one witness or a certain type of evidence to convict. *Id*. The *Joliff* court specifically detailed, "The state could have directly asked the venire whether they could find a defendant guilty if they believed the testimony of a single eye witness. A question in that form would not commit any juror to a course of conduct." *Id.*

Moreover, while those cases demonstrate a lack of error in the convictions and sentences, in post-conviction matters we emphasize, too, that "[c]ounsel will not be deemed ineffective for reasonable choices of trial strategy, no matter how ill-fated they may appear in hindsight." *Bracken v. State*, 453 S.W.3d 866, 872 (Mo. App. E.D. 2015). The presumption of reasonable trial strategy is not overcome by testimony that trial counsel does not recall her trial strategy. *Rios v. State*, 368 S.W.3d 301, 311 (Mo. App. W.D. 2012).

Upon reviewing the record, we note that the State prefaced its *voir dire* questions regarding one child witness upon witness credibility and assessing her truthfulness or untruthfulness. At one point during the questioning, the court told the venire panel that they could not discuss what the evidence was going to be or who would be called to testify, but they

9

were only trying to understand attitudes on various issues in the way the questions were asked. Later in *voir dire*, Trial Counsel emphasized the State's burden of proof and also asked the venire panel whether anyone felt the State's burden should be higher than proof beyond a reasonable doubt, more than just firmly convinced.

During the evidentiary hearing, Trial Counsel acknowledged that she later recognized the impropriety of the single witness questions and believed she should have objected, and also denied that her failure to object was a conscious decision. However, Trial Counsel had made efforts to emphasize the State's burden of proof beyond a reasonable doubt during *voir dire*, and her judgment in hindsight does not deem her ineffective. Moreover, under *Joliff*, we find the State's questioning for preconceived prejudices was indeed proper and also benefited Movant. 867 S.W.2d at 260. Counsel is not ineffective for failing to make non-meritorious objections. *State v. Six*, 805 S.W.2d 159, 167 (Mo. banc 1991). The first prong of *Strickland* is not met because Movant cannot show Trial Counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation. *McLaughlin*, 378 S.W.3d at 337. The motion court's findings and conclusions are not clearly erroneous. Movant's first point is denied.

**Point II**

In his second point, Movant argues the motion court clearly erred in denying his claim that Trial Counsel was ineffective for failing to object to Interviewer's improper testimony that a hypothetical disclosure under circumstances identical to Victim here arose accidentally and therefore was less likely to be fabricated, because Trial Counsel's failure to object allowed the jury to consider an expert opinion bolstering the credibility of Victim's testimony. He contends that because Trial Counsel failed to make a meritorious objection to Interviewer's improper

10

opinion testimony, there is a reasonable probability that but for Trial Counsel's error, the jury would have acquitted him of all charges.

During trial, Interviewer testified that child disclosures of sexual abuse are categorized as "accidental" and "purposeful." An "accidental" disclosure could "be someone finding a text message or a note or a picture or something where a child wasn't intending for that information to be found out." A "purposeful" disclosure could "be a child coming to a trusted individual and making a statement, saying, 'I need to tell you something.'" When asked how she would categorize a disclosure made when "a mother's trying to find out an injury to a child[,]" Interviewer testified that "on our referral we also have a section called 'Questioning,' so that the person sending the referral can check whether it was a question being asked of the child." Interviewer added, "that would be probably more accidental because a child's not – children don't want to, you know, not tell their parent the truth and tell what's going on, so I would say it was more accidental."

During a thorough cross-examination, Interviewer answered that it was not her job to determine the truthfulness of the child she interviews. Instead, the Children's Division investigator and law enforcement officer often watch the interview in real time, which was the case with Victim's interview. She said she tries to determine circumstances to help investigators determine the truth of the matter. Trial Counsel further questioned Interviewer about her lack of follow-up questions and her failure to interview Victim's brother.

Although "particularized testimony concerning the alleged victim's credibility" is impermissible, a child interviewer is allowed to provide general testimony describing behaviors and other characteristics commonly observed in victims of sexual abuse, which assists the jury in

11

understanding the behavior of sexually abused children. *State v. Thomas*, 290 S.W.3d 129, 135 (Mo. App. S.D. 2009).

Again, as in point one, a defendant must overcome a strong presumption that counsel's performance was sound trial strategy, no matter how it appears under the lens of hindsight. *Bracken*, 453 S.W.3d at 872. The presumption of reasonable trial strategy is not overcome by testimony that trial counsel does not recall her trial strategy. *Rios*, 368 S.W.3d at 311. When a seasoned trial counsel does not object to otherwise improper questions or arguments, it may be attributed to trial strategy, especially because frequent objections tend to irritate the jury and highlight statements complained of, resulting in more harm than good. *State v. Tokar*, 918 S.W.2d 753, 768 (Mo. banc 1996).

During the evidentiary hearing, Trial Counsel did not independently recall Interviewer's trial testimony, but thought Interviewer made an objectionable statement that Victim's disclosure was accidental because, "looking back on it, it tries to bolster the credibility of [Victim's] testimony, as well as it kind of invades the province of the jury on whether or not she's a credible witness." Trial Counsel agreed the witness's credibility here was "everything." However, "[f]rom the record it appears that [Trial Counsel] didn't [object]," and said "there's no particular reason." Instead, Trial Counsel recalled taking the opportunity to cross-examine her and confirmed with Interviewer that it was not her job to assess whether or not a child was telling the truth, which was intended to raise doubt as to her credibility.

Thus, even though Trial Counsel vaguely recalled the testimony at issue, and did not know a reason why she did not object, the record indicates her effective trial strategy was to cross-examine the witness to raise doubt as to her credibility. Interviewer did not testify that one category of disclosure was more credible than another, nor did she comment on Victim's

12

credibility. Accordingly, Trial Counsel's failure to raise a non-meritorious objection does not constitute ineffective assistance of counsel. *Six*, 805 S.W.2d at 167. A reasonably competent attorney under similar circumstances could have opted to cross-examine the witness rather than object to her direct testimony. Movant has not demonstrated the first prong of the *Strickland* test is met. The motion court's judgment finding Trial Counsel impeached Interviewer's testimony in an attempt to bolster Movant's case at trial was not clearly erroneous. Movant's second point is denied.

**Point III**

Third and finally, Movant alleges the motion court clearly erred in accepting the State's argumentative proposed findings of fact and conclusions of law via "rubber stamp" because the findings of fact and conclusions of law filed by the motion court contained factual inaccuracies and showed no sign of independent examination or analysis of the relevant law and facts.

The Missouri Supreme Court has held "that it is not *per se* error for a trial judge to adopt without change the wording of a party's suggestions or of proposed findings of fact and conclusions of law," but it also warned against doing so because "advocates are prone to excesses of rhetoric and lengthy recitals of evidence favorable to their side but which ignore proper evidence or inferences from evidence favorable to the other party." *Weeks v. State*, 140 S.W.3d 39, 49 (Mo. banc 2004) (internal citation omitted). However, this common practice is constitutional "[a]s long as the court thoughtfully and carefully considers the parties' proposed findings and agrees with the content. . . ." *State v. Kenley*, 952 S.W.2d 250, 261 (Mo. banc 1997); *Skillicorn v. State*, 22 S.W.3d 678, 690 (Mo. banc 2000).

Movant argues the motion court's adoption of the State's proposed order without any alterations is error because it contains several erroneous determinations as Movant pointed out in

13

points one and two. We do not condone this practice, especially the motion court's failure to properly denominate the order as opposed to leaving it titled "Respondent's Proposed Findings of Fact, Conclusions of Law and Order." However, based on our review of the record and analysis in points one and two, *supra*, we find the motion court's judgment was supported by the evidence, and nothing in the record supports an argument that the court did not "thoughtfully and carefully" concur with the State's proposed judgment it adopted. The motion court's judgment is not clearly erroneous. Movant's third point is denied.

## Conclusion

The motion court's judgment is affirmed.

_____
Lisa P. Page, Presiding Judge

Gary M. Gaertner, Jr., Judge and
Angela T. Quigless, Judge concur.

14